## THE INHABITANTS OF MONTEREY *vs.* THE COUNTY COMMIS-SIONERS OF BERKSHIRE.

The authority conferred upon selectmen by the Rev. Sts. *c.* 24, § 66, to lay out town ways for the use of their respective towns, is limited to roads having their *termini* within the town; but it is no objection to such laying out, that the road is intended as one link in a chain of continuous roads; that it is for the conve-nience of the inhabitants only from its connection with some great thoroughfare and that when established, it will be for the use of the public generally, as well as of the inhabitants of the town in which it is situated; and if selectmen un-

reasonably neglect or refuse to lay out such way, the county commissioners may lay out the same, under the appellate jurisdiction conferred upon them by the Rev. Sts. *c.* 24, § 71.

A petition to the selectmen of M. to lay out a way, having described the same as commencing at a point in the town of M. and extending "to the line of N.," and the county commissioners, upon the refusal of the selectmen, having laid out the same, describing it as beginning at a certain point within the town of M. and "terminating at a stake in the line dividing M. from N.;" it was held, that there was nothing, either in the petition or in the location, to show that the road was not within the jurisdiction of the selectmen to lay out.

Whether a town way, for the laying out of which application is made to the county commissioners, on the refusal of the selectmen to lay it out, is for the use of the town within which it is situated, is a question exclusively within the discretion of the commissioners to decide.

Where an order of county commissioners, passed in January, 1849, directed a town to make a certain road, by the first of October then next, and also not to commence the work until the time (one year) for applying for a jury to change the location had passed; and the commissioners, in May, 1850, (the road not having been made,) passed an order for the making and completion thereof, by the first of September then next; it was held, that whether the first order was nugatory and void or not, the second order was valid; and that it was no objection to the last order, that the first was erroneously cited therein as having been passed in January, 1848, instead of January, 1849, the error being merely clerical, and it being apparent, that the petitioners were not misled thereby.

A county commissioner is not disqualified by the Rev. Sts. *c.* 14, § 26, to act in the laying out of a road, by reason of being an inhabitant of a town to the line of which the road in question extends, and with a road in which it is intended to connect.

Where an application to county commissioners to lay out a town way, on the refusal of selectmen to lay out the same, did not allege that they "unreasonably" neglected and refused to do so; but the town appeared and were heard, without any objection to the omission, and the commissioners stated in their adjudication, that the selectmen "unreasonably" refused to lay out the road; it was held, that the error was merely one of form, and no ground for issuing a *certiorari.*

The provisions of *St.* 1848, *c.* 192, requiring county commissioners and the authorities of cities and towns to cause stone bounds or other monuments to be erected at the *termini* and angles of all roads laid out by them, are merely directory, and not necessary to be complied with, in order to a valid location; they more properly relate to acts to be done after the way is located; and compliance therewith need not be stated on the record of the laying out of the road.

THIS was a petition for a *certiorari* to the county commissioners of Berkshire, to certify the record of their proceedings in the laying out and establishment of a highway in Monterey. From the petition, and other papers in the case, the following facts appeared:

Egbert B. Garfield and others, on the 21st of June, 1848, presented the following petition to the county commissioners for this county : " The undersigned, inhabitants of the town of Monterey, would represent that they have petitioned the selectmen of that town, to lay out a town road and locate the same, commencing not far from the stone bridge east of the dwelling house of Egbert B. Garfield, thence down the stream to the line of New Marlborough : That the selectmen have neglected and refused to lay out said road, except on condition of all damage being relinquished : We therefore request you to view said route, and lay out and locate said road, if advisable : That, on the nineteenth instant, the selectmen aforesaid viewed said route and refused to locate the same."

Upon this application, and after due notice thereof had been given, the commissioners met and viewed the proposed route, and heard the parties, on the 24th of August, 1848, and thereupon adjourned the meeting to their session at Lenox, held on the first Tuesday of September following, at which they adjudged and determined that the selectmen of Monterey did " unreasonably refuse and neglect " to lay out the town road as prayed for in the said petition ; that the petitioners, having complied with all the provisions of the statute, had " fully brought the case within the jurisdiction of the county commissioners; " and that " the board will proceed accordingly, under a new notice, to locate the said town way as prayed for by the petitioners."

The commissioners thereupon, at their January session, 1849, proceeded after due notice, to lay out the road : " Beginning at a stake near the centre of the travelled road, bearing north 74° east from the chimney of E. B. Garfield's dwelling house," by certain courses and distances, " to a stake in the line dividing Monterey from New Marlborough." The town of Monterey were directed to make the road by the 1st of October, 1849, and at their own expense. They were directed also not to break ground, until the right to a jury to change the location should have passed.

The commissioners subsequently, on the 24th of May, 1850, passed the following order :

"Whereas, at their January session, A. D. 1848, the county commissioners of Berkshire county, did locate and establish a town road in the town of Monterey in said county, on the petition of E. B. Garfield and others; and whereas in their order of said date to the town of Monterey, the county commissioners required said town of Monterey to build said road within the period of time allowed by the statute for the calling of a jury to change the location; and whereas the period of time allowed by the statute for the calling of such jury has now passed: It is hereby ordered that the town of Monterey do now proceed to build said road, and that the same be completed by the 1st day of September next, in accordance with the directions for making, contained in the order before named of January, 1848, and that all owners of lands, over which said road is located, have until the 1st day of July next, to remove all timber, trees and other things thereon."

The petitioners prayed that a writ of *certiorari* might be issued to the commissioners, for the following reasons:

"1. Because the selectmen of the town of Monterey did not 'neglect and refuse' to lay said road as a town road 'unreasonably,' as represented to said commissioners, for the reason that the said road prayed for by said Garfield and others, was emphatically a road leading from town to town, and depending entirely for its convenience, necessity and utility, upon a road laid or to be laid in the town of New Marlboro', and not to be built by said New Marlboro' unless the said town of Monterey should build its part of said road prayed for, lying within its limits; the said inhabitants therefore say that the road, prayed for by E. B. Garfield and others, was not and is not such a road as the selectmen of Monterey were authorized and empowered to lay, by the 66th section of chapter 24 of the revised statutes. The refusal therefore of said selectmen to lay a road which they were not authorized to lay by the statute, would found no jurisdiction whereby the said county commissioners could act in the premises, and proceed to lay out and establish the same as contemplated in the 71st section of the 24th chapter of the revised statutes. It appears from the records of said commissioners laying out said road, that they began at a stake near the centre of the travelled road bearing north 74° east from the chimney of E. B. Garfield's dwelling house, and north 9½° west from the chimney of said Garfield's hall house, (so called,) thence south running various courses and distances to a stake in the line dividing Monterey from New Marlboro', not connecting with any open road in said New Marlboro', nor near any open road; they therefore, the inhabitants of Monterey, petitioners as aforesaid, say that under no circumstances could it be said that the said selectmen had unreasonably neglected and refused to lay out said road, or a town road or town way; but that the record of said commissioners shows, as well as the evidence presented to them and to said selectmen shows, (if it shows any necessity or convenience for a road such as prayed for,) a necessity for a highway or county way leading from one town to another town, for the use and convenience of the inhabitants of the towns of New Marlboro' and Monterey, respectively, and for all the inhabitants in said county, as contemplated in the statutes; yet in despite of the insufficiency under the statutes of the representation in the petition of said Garfield and others, in regard to the action of said selectmen touching said road, the said commissioners have, as these petitioners believe, illegally and improperly assumed jurisdiction in the premises, and laid out the said road as a town road, and ordered the town of Monterey to build the same, at a most ruinous expense to the inhabitants thereof.

" 2. Because the said commissioners, by their order of January 3d, 1849, directed the said town of Monterey to make said road 'by the 1st day of October, A. D., 1849, and at its own expense,' being three months before the time allowed by the statute for calling a jury to change the location of said road had expired, and by the same order directed the town 'not to break ground until the right to a jury to change the location shall have passed,' which time would not have passed until the 3d day of January, 1850, thus rendering said order utterly nugatory and absurd ; or if it could have any rational or consistent construction, it must be construed to mean that the town proceed to build the road when the right to call a jury to change the location had passed, to wit, on the 3d day of January, 1850, in the middle of winter, thereby depriving the town of their right to build said road under the statute, by requiring it to perform an impossibility ; yet the said commis sioners proceed in the month of April, 1850, to let and contract for the building of said road, on the ground of a neglect and refusal on the part of the town to build the same.

" 3. Because the said commissioners have utterly disregarded the act of 1848, chapter 192, relating to town and county roads, as appears by their record touch-ing the laying out of said road, inasmuch as they have erected no bounds at the *termini* and angles of said road as required by that statute, which it was entirely practicable for them to do ; nor have they made any heap of stone, or living tree, or permanent rock, or corner of an edifice a substitute for said stones at the *termini* and angles of the same, but, on the contrary, have made their survey and placed all their monuments and bounds upon the centre of said road.

" 4. Because the said commissioners, long after the expiration of the time for calling a jury to change the location of said road, and without the intervention of a jury for that purpose, as contemplated in the statute, and after they had con-tracted for the building of the same, on the ground of refusal on the part of the town to build said road according to their directions, and after the subject matter of said road had been continued from time to time by said commissioners, for con-struction, and for that purpose only, the said commissioners proceed on the 24th day of May, 1850, illegally and improperly to issue some sort of order of that date to said town of Monterey, to build a road according to directions for making con-tained in an order of January, 1848, no such order ever having been served upon said town of Monterey, which said order is uncertain, illegal and void.

" 5. Because Seth Norton, one of said county commissioners, assumed to act and did act in the view of the premises, and in the determination of the question of 'neglect and refusal' of the selectmen of Monterey, as represented in the petition of Garfield and others, as well as in the determination of the question of common convenience and necessity of said road, and in the location thereof, he being, at the time of such action and adjudication in regard to said road, and now, a resident of the town of New Marlboro', where a part and parcel of the said road was to meet and connect with another portion of road leading to Hartsville, in said town of New Marlboro', and laid by the selectmen of New Marlboro', and accepted by said town, and to be built only upon the condition 'that the town of Tyringham (now Monterey) lay a road to meet the same, or one is built by the county commissioners to meet the same ;' thus the said Norton having a direct interest in the laying of the said road, in said Monterey, without which the road in said New Marlboro' could be of no sort of use or convenience to the inhabitants of New Marlboro', nor could the road in said Monterey be of any sort of convenience or utility to the inhabit

ants of Monterey, without the connection aforesaid; yet the said Norton well knowing the premises, as well as the board of commissioners, of which he formed a part, proceed and lay said road contrary to the 26th section of chapter 14th of the Revised Statutes; and the said Norton had a further bias and interest in laying said road in Monterey, having laid that part of the road in New Marlboro' as a selectman of that town; yet a board of disinterested commissioners might have been formed without said Norton, by substituting one of the special commissioners in his place."

*J. Branning*, for the petitioners.

*I. Sumner*, for the respondents.

DEWEY, J.    This is a petition for a *certiorari* to the county commissioners of this county. The ground of the application is an alleged irregularity in the proceedings of the county commissioners, in establishing and locating a certain road in the town of Monterey. The leading objection taken to these proceedings, in the argument in support of the motion for a *certiorari*, is the want of jurisdiction on the part of the county commissioners to act in this matter. The jurisdiction assumed by them was wholly an appellate, and not an original jurisdiction.

It was urged by the counsel for the petitioners, that this road was of such a character as made it a public highway, so far as to require it to be laid out by the county commissioners only upon an original application to them, and not by appeal from the action of the board of selectmen, refusing to lay out the road. This leads us to consider the jurisdiction of county commissioners, in relation to roads, both as to original jurisdiction, and on appeal from the refusal of selectmen; and the authority of selectmen in relation to town ways. The original jurisdiction, as to establishing ways, is vested in the county commissioners by the Rev. Sts. *c.* 24, § 1, which gives them the power to lay out public highways, or county roads, as they are sometimes called, in distinction from town ways, though such public ways may be either roads leading from town to town, or from place to place, within the same town. In either case, the county commissioners have original jurisdiction. By the Rev. Sts. *c.* 24, § 66, it is also pro vided, that the selectmen of the several towns may lay out town ways " for the use of their respective towns."

It is quite obvious, that the distinctive character of a road

as a town way, or a public highway, must, to some extent, be indicated by the manner of its creation, or the power which gives it a legal existence. As already stated, the county commissioners have not only authority to lay out highways from town to town, that is, passing through various towns, but also highways, the *termini* of which are exclusively within the same town. Hence, to some extent, local roads may be either town ways, or public highways. So also a town road may be a road of great public travel, from its connection with other roads. The only criterion, therefore, for distinguishing between these different species of roads, is to ascertain whether the proceedings for their location originated with the selectmen, or with the county commissioners. If with the former, they must be town ways, as the jurisdiction of the selectmen is confined to such ways.

The power vested by the statute in these two tribunals is essentially different. The authority vested in the selectmen is a more restricted power, and one limited to roads having their *termini* within the town. With this limitation, the selectmen are authorized, in their discretion, to locate any road within their respective towns, for the use of the inhabitants. They are to act in the matter according to their own judgment, subject only to the restriction just named, and the approval of the town, if the selectmen decide in favor of such a location; and the county commissioners, in case of unreasonable neglect or refusal of the selectmen to lay out a way, or of the town to accept the same, have the like discretion and power to adjudicate, on an appeal to them, as to the road being one required for the convenience of the inhabitants of the town in which it is to be located.

It by no means follows, from the limitation of town ways to ways for the use of their respective towns, that such a way may not be used as a link in a chain of continuous roads of great public travel. The convenience of the inhabitants of the town may require the establishment of the road because of its direct connection with some great thoroughfare; and when thus established, it is open to the use of the public generally, as well the inhabitants of other towns as those of

the town in which it is situated.   The legislature has vested this power to lay out roads in these tribunals, and has seen fit and proper to clothe them with discretionary powers of a somewhat extended character, and such as we have neither the power nor the disposition to interfere with.

The inquiry is then, whether, upon the facts stated in the present case, the county commissioners have exceeded their jurisdiction; and this, it will be perceived, depends upon the decision of another question, namely, whether the application to the selectmen of Monterey, to lay out and establish this road, was one cognizable by the selectmen.   The action of the county commissioners was not upon an original application, but under the appellate power given in Rev. Sts. *c.* 24, § 71.   It is not enough, therefore, for the respondents to show that the county commissioners might have original jurisdiction of the matter of laying out this road.   The petitioners for the same elected to apply to the selectmen to lay out the road as a town road, and it is only as such town road that the county commissioners have established it.   If, therefore, this was not a road that could be legally laid out by the selectmen of Monterey, the whole proceeding was irregular, and ought to be quashed.

Does the application to the selectmen indicate a road of such a character as was beyond the scope of the authority of the selectmen to lay out?   In the petition, it is called a town road, and is described as commencing " not far from a stone bridge, east of the dwelling-house of Egbert B. Garfield, thence down the stream to the line of New Marlborough."   In the location by the commissioners, it is described as a town way, beginning at a certain point, " within the town of Monterey, and terminating at a stake on the line dividing Monterey from New Marlborough."   There is nothing on the face of this location, or in the petition for laying out the road, that implies that it is to be a road from town to town, in the sense that would require an original application to the county commissioners to lay out the same; it is wholly within the territorial limits of Monterey ; and, so far as is apparent on the record, might be properly located as a town road.

34 *

But the petitioners for a *certiorari* now urge that, in point of fact, the road was required principally for the use of others than the inhabitants of Monterey. That, however, was a question exclusively for the county commissioners; and we should be slow to interfere with the doings of inferior tribunals, in a case where the question before them is one exclusively within their discretion and judgment, as to the convenience or necessity of the road. They are the tribunal, constituted by law, to decide whether the road is wanted for the use of the inhabitants of Monterey; and having proceeded to establish and locate this road, as a town road, upon an appeal from the selectmen, they must have found that fact. This objection cannot therefore avail the petitioners.

It is then further objected, that these proceedings ought to be quashed, because the first order of the commissioners for constructing the road was objectionable, inasmuch as the order was rendered a nugatory one, as to the time fixed for its construction, by further requiring the town of Monterey to postpone the time of the commencement of the work, until the period had elapsed for calling out a jury. However fatal this objection might be, as respects the first order for the construction of the road, it is now entirely immaterial, as the commissioners subsequently, in May, 1850, made a new order for the same to be completed by the 1st of September, 1850, and this order was free from any restriction. This properly imposed the duty upon Monterey to make the road, and removes all further difficulty as to the first order, unless an objection taken to the second order is fatal to that order. It is objected, that it recites the adjudication establishing the road as adopted, "January, 1848," whereas it was adopted, "January, 1849." This was a mere clerical error, and, unless the petitioners were misled thereby, cannot avail them. That they really understood the order, must be apparent from their connection with the subject, during the various proceedings thereon, as well as from the other parts of the recital, stating the road to be the same that was laid out on the petition of Egbert B. Garfield. In our opinion, this defect is no sufficient ground for quashing these proceedings.

It is next objected, that Seth Norton, one of the commissioners acting in the laying out and establishing of this road, was interested, by reason of his being an inhabitant of New Marlborough. But this road was wholly within the limits of Monterey, and therefore no such objection exists for this cause. The fact, that the road extended to the line of New Marlborough, did not render Norton incompetent to act in the case, and require a special commissioner to be substituted in his place.

A question was also raised at the argument, as to a supposed defect in the original petition to the county commissioners. This was not assigned in the application for the *certiorari*, as a cause for granting the same. The defect now suggested is the omission of the word "unreasonably" in the representation to the county commissioners, that the selectmen of Monterey had neglected and refused to lay out the town way asked for by Egbert B. Garfield and others. It is true, that the statute only authorizes an appeal to the county commissioners, when "the selectmen shall have unreasonably neglected or refused to lay out" the road. But no particular form of application to the county commissioners is prescribed by the statute. The fact, that the selectmen have unreasonably neglected or refused, must be made to appear to the county commissioners; and, in the present case, it is directly found, and so stated in their adjudication establishing the road. The town of Monterey also appeared, and were heard before the commissioners on the case, without taking this objection. This obviated all substantial objection, and makes the objection one of mere form. But nothing save substantial errors, and such as would work manifest injustice, if not corrected, will be regarded in an application for a *certiorari*.

Another ground stated as a reason for issuing the *certiorari* is, that the county commissioners have disregarded the provision of the act of 1848, *c.* 192, requiring them to erect stone bounds, or, if this is impracticable, certain other prescribed monuments, at the *termini* and angles of all roads thereafter laid out by them. Various reasons may be given, why this ground cannot avail the petitioners: 1st. The provision in

question is merely directory, and does not enter into the essential elements of a good location of a highway. 2d. It is not required that the records should show the creation of such bounds or monuments; and, therefore, if a writ were to issue, and the records were to be brought before us, the omission of any recital of such acts in the record, would not invalidate the location of the road. 3d. These acts are more properly acts to be done after the road is finally located, and hence would not be stated as done, at the time when the record is made up of the original establishment and location of the road.

None of these grounds being sufficient to sustain this petition, it must be dismissed.